Mr. Pearson. Good morning, Your Honors. May it please the Court, my name is Stephen Pearson. I represent Gregory Turza appellant and cross appellee in this appeal. The District Court's May 28, 2015 remedial order which followed this court's ruling in appeal number one was an error and should be reversed for four reasons. This is not a common fund case as this court determined in appeal number one. Second, the TCPA statute does not provide for fee shifting. Third, because Congress did not provide for fee shifting in the statute, allowing the class to recover the full amount of $500 per fax per offending fax in a non-common fund case inescapably violates the American rule against fee application in this case. It's a non-common fund case, the injured parties are identifiable, and there are no unusual circumstances that would warrant application of cypre. Unfortunately, on remand to address the remedial issues in this case from appeal number one, the District Court got right only the part regarding cypre, yet issues regarding cypre are inextricably tied to this court's conclusion that this is not a common fund case. Nothing in the briefs that have been submitted by appellees squarely addresses this fundamental issue, which is controlling on this appeal. This court ordered the District Court to evaluate the way in which class counsel are compensated in light of Boeing v. Van Gemert, but importantly Boeing v. Van Gemert proceeded on a common fund basis, because unlike here, Boeing lost its right and interest in any remainder of the funds which were unclaimed. That's absolutely the contrary to the circumstances we have presented here. So I want to make sure I understand your argument, just normally how a judge directs any remaining money would be reviewed for under the abuse of our previous decision meant he could not make a cypre award, so he was acting under a mistaken understanding of the law. Is that in essence your argument? That is, Your Honor, and a mistaken understanding of what this court determined when it said and ruled this case is not a common fund case, and I think with all due respect to the District Court, and I attempted to raise this issue twice unsuccessfully with the District Court, while the vast majority of class action cases proceed on a common fund basis, and the high 90%, this is the rare case that did not. It's a contested case, and it's a contested case which we properly appealed from this, quote, judgment to the class, which was a non judgment. It was a procedural vehicle by which the ultimate maximum amount potentially recoverable was to be secured. We have secured that. In fact, as I tried to, the second time on remand with the District Court, explain why this court had determined this is a non-common fund case and the importance, inextricable importance of that with regard to attorneys fees. The court found that there can be no cypre because there can be no remainder, but the reason there's no remainder is because this is a non-common fund case, and these issues are inextricably intertwined. Well, the District Court apparently initially understood that and then backtracked. It seems to me there's a series of orders. Actually, the amendment with regard to the two remedial orders, he initially understood and cypre as it is never addressed the issue that this is a non-common fund case, and the court struggled with Boeing versus Van Gemmer. Why? Because procedurally Boeing versus Van Gemmer, it's a procedural oddity simply because Boeing failed to preserve its right to appeal this very issue, and by failing to preserve its right to appeal this very issue, the U.S. Supreme Court made it clear that Boeing had forfeited any interest in the remainder of funds. Right, and the court treated it as a common fund case even though it really wasn't. Precisely, Your Honor. So here we are in a case that has been determined as a matter of law is a non-common fund case. All of the rest of our argument follows from that determination. Cypre, attorneys fees, violation of the American rule, and the conclusions is if the TCPA statute provided for fee shifting, which it doesn't, which makes it inescapable that an award of the full $500 per offending fax to the class members necessarily violates the American rule. On that basis, unless there are any other questions from the panel, we stand on the rest of our submissions. I'll deal with the rest of my argument to the extent necessary in thank you. Thank you, Mr Pearson. Morning, Your Honors. Thank you for having me on behalf of the appellee cross upon Ira Holtzman in the class. Um, this is the court. This court already had this case before. Obviously, when it came up, it was on a judgment entered in favor of the class representative acting individually and on behalf of the rest of the class members, and the court affirmed that judgment. The court reversed, however, a subsequent order entered by the district court that was a remedial order that talked about distributing money for Cypre, and this court said that needs to be reconsidered because it's not just a big fund of money to be handed out however people want. It needs to go to the class members first. It needs to benefit the class members most importantly, and, uh, you know, Cypre is one of the things that could be considered at that point. Um, I have a hard time understanding how this case is any different than Boeing versus Van Gemert. Other than the fact that we've held that it's not a common fund case? Well, you said that it's not a true common fund case. I understand. I can understand your position that we got that wrong. No, no. But we did get it one way or the other, and it's law of the case that this is not a common fund case, and Boeing's about common fund cases, and footnote 5 of Boeing makes that as clear as clear can be. It says if the money is just going to be used to security for individual payouts, why that's another problem. Well, that's that's not what's happening here. What's happening here is... That's certainly what the district court said is happening here. It's what we said is happening here. Uh, I don't understand that, your honor. What happened is... The district court says the money is being used to security for gets compensation for the number of faxes received, and the rest of the money goes back to Terza. That's what the district court said. That's using the money as security. That's exactly what Boeing was talking about in footnote 5. Okay. So there we are. It seems to me that the district court can be... District Court's two decisions are incompatible. If this is a common fund case, then Terza can't get anything back. If Terza gets anything back, it can't be a common fund case. But both of these things can't be right at once. Okay. I mean, there have been some courts that said reversion to the defendant is an alternative even in a common fund case. That it doesn't have to... It doesn't have to go to charity. It could revert to the defendant, and that's how the district court read this court's opinion in it the first time around, was that if it's not... If it's not a common fund case and this court said it's not, then you can't have Cypre and you must give the money to charity. But you agree our previous opinion didn't foreclose Cypre on the remand, right? Yeah. I mean, we argued that it didn't. The court's opinion identified what to do if there's money that we can't distribute. And the appellant just told you that the class members are identifiable. The plan is to send everybody their proportionate share based on how many faxes were received by this fax number. They will get their share of the money, less attorney's fees. So, given that you agree that our previous opinion didn't foreclose Cypre on remand, doesn't the district court's reasoning reflect that it thought, because our opinion said it wasn't a common fund case, that he could not award Cypre? In fact, he said because this isn't a common fund case, a Cypre award really isn't appropriate, I think, and that was a mistake I think I made. Yeah, yes, Your Honor. That's our cross-appeal. He misunderstood our ruling, our decision, and that's an error. So, we're not in abusive discretion land. That's the argument on our cross-appeal. So, there was a judgment entered. It was affirmed after Terza appealed, and on the proposal is to distribute it. One of the parts of that proposal is that we would get paid attorney's fees from it, and whether you talk . . . I'm not really sure why it matters whether we say it's a common fund or we don't say it's a common fund. The money is there. We know who it belongs to, and the attorney's fees would come from their money, not from Terza's money, because it's not Terza's money anymore. He already lost, just like Boeing lost and didn't appeal. Terza lost, did appeal, but lost on appeal, and so we're . . . Actually, no. We indicated in the prior opinion that Terza did not give up his rights in the remainder. Oh, no, I don't mean . . . I'm not talking about the remainder. I'm just talking about the judgment amount. Right, but if he's got a right to whatever is unclaimed by the members of the class, then it can't be a common fund case, as we said it wasn't a common fund case, and there's nothing to base a CyPray award on. Okay, well, and the court hasn't . . . Right, because there won't be any . . . I mean, if there's a remainder, it goes back to him. That's what the court ordered. The court doesn't have any discretion to give it to charity. Yeah, I'm not sure why the court wouldn't have discretion, why if somebody wins money against somebody else and for some reason they can't be given all the money, what happens to it? That's not what happened here, though. That's the question, whether 4.2 million is an award to the plaintiff's class, or as Boeing put it in footnote five, security for payment of individual awards. Yeah, I mean, I think it's the former, but we're disagreeing with the wrong people. And so on our cross appeal, the only issue was that we thought Judge Gettleman should have had the discretion to decide what to do with any remainder, if there is any remainder. Nobody knows whether there will be any remainder, but if there is, we argue he had the discretion to decide whether it would achieve to the state, whether it would go to the charities we recommended, which was the FCC. Why do we not know whether there is a remainder? Because we haven't . . . Has the class not yet submitted their claims? No, we have not. There's been constant appeals. The court approved the Now I'm worried. If the class hasn't submitted their claims and the district judge has not yet made a final decision about who gets what, do we have a final judgment? Well, I mean, we did, they appealed before. That's a good question, whether it's a separate issue. I mean, what we know is that we can send the first distribution to the class. It's obvious that this has slipped everybody's We'll give the parties 14 days to file supplemental memos on the question whether we have a final decision in the absence of a concrete distribution order. Well, Your Honor, we do have a concrete distribution order. We just haven't done any part of it to know whether there's going to be anything left. Was there stay litigation? State litigation? Was there a stay motion? Has the court granted the stay actually? So we have a final judgment that has been stayed? Yes. Well, we have an order that was ordered us to distribute to notify the class members, send them these forms, send them their money, and Judge Gettleman denied their motion to stay that, but the defendant appealed to this court and this court granted that stay. So, but everything hasn't come back then from the various plaintiffs? Nothing has happened. So we have no amount certain as to the identifiable plaintiffs? No, we do. We know who the people are. We have a form. The form is to go to people to say, here's how your check is going to be payable. And the judge did approve that notice and that form, and that's in here too, and Mr. Terza did not appeal that. We just haven't actually distributed any money yet. So then the amount is certain because they've notified, they know the amount. Has the court entered an order totaling those amounts? Yes, yes. We just haven't actually distributed any to know whether the money sent to Jim Smith doesn't get cash because he died and he's gone and we can't find him and now his money comes back. Right, so we don't know what the remainder is? Correct, correct. So if we don't know what the remainder is, then we That is a problem. In this, in the supplemental filings, the party should describe exactly what the procedural posture is. Okay. Right, we knew at the time of a prior appeal that class members had been notified and some had requested exclusion because we even said how many people had opted out. The question that sparked my question is, as part of this opt-out process, did people actually submit concrete claims to payment or have they not done that? They have not and it's because they don't need to. We have a list and it says this is the fax number of such-and-such a company and they got that many faxes and that was already established in the first case. So they will get a check for that times 500 less attorneys. If they're all just getting checks and there's no further step, then almost by definition there can't be any remainder, right? Sort of, yeah. I mean except that some checks won't be cashed, some checks won't be deliverable. So we have a form. Okay. Supplemental memo should spell out exactly the posture and exactly what's going to happen so we can figure this out. Okay, okay, thank you. Mm-hmm. Thank you, Mr. Bach. Anything further, Mr. Pierce? Just briefly, Your Honors, on that issue. Appendix number 11 is the proposed notice of judgment and attached claim information. I think the confusion that was just raised deals with the fact that this is what was called a do-nothing distribution and it's that do-nothing distribution which included an award of a lump-sum attorney fee of roughly 1.4 million dollars, which was based on a common fund theory, is erroneous. And so if we didn't appeal, the money would have disappeared forever and the fee award would have applied. So we'll supplement as the court has requested, but I think there's a simple answer to why we are here and why we are properly here. And with regard to that notice of judgment, the notice of judgment, which was to go to the class, is erroneous and violative of both law of this case and violative of Illinois rules of professional conduct. It does not spell out how the attorney's fee is to be calculated consistent with this court's ruling, nor is there anything in the record that quantifies as the requisite consent in writing by class members to a contingent fee pursuant to Rule 1.5 of the Illinois Rules of Professional Conduct, which was the basis upon which this notice of judgment... I don't know what you think the Illinois rules are doing in this case. We held more than 20 years ago that the Illinois rules of Are you asking us to overrule that decision? I'm not, Your Honor, but I do... Well, then you aren't paying any attention to it, though. That's Rand against Monsanto. In the non-common fund scenario, where we have this procedural device that has been used here, we would submit that those rules do apply. At a minimum, there needs to... So then you must be asking us to overrule Rand. You certainly haven't made such a request. No, Your Honor, what I'm asking is that what is communicated... We said that federal class actions proceed under federal rules and state ethical norms can't change federal class action procedure, period. And the class notification needs to accurately, at a minimum, describe the manner in which fees are being awarded. And on that basis, the notification is erroneous and the orders should be vacated. If there are no other questions, I would stand on our submissions. Thank you. Thank you. We will look forward to receiving these memos in 14 days and the case will then be taken under advisement.